THE CITY OF MUSKEGON v. HERMAN O. LANGE.

[See 90 Mich. 592; *post*, 26.]

*Taxes—Bank stock—Liability of cashier.*

1. Section 33 of the tax law of 1889, which provides that, upon demand being made by the treasurer upon the cashier of any bank for the payment of any tax assessed upon the shares of its capital stock, it shall be the duty of the cashier to pay said tax, and charge the same against the shares of stock so assessed, imposes upon the cashier an official, and not a personal, obligation.[1]

2. Upon the making of such demand it becomes the duty of the bank to pay the tax demanded, and, if the performance of said duty is to be enforced by an action at law, the suit should be brought against the bank, and not against the cashier.

3. Whether or not an action at law against the bank is a proper procedure to collect such tax—*quære*.[2]

---

[1] The same provision is found in the tax laws of 1891 and 1893.

[2] See *Eyke v. Lange, post*, 26, holding that an action at law will lie against the bank.

Error to Muskegon. (Palmer, J., presiding.) Argued November 1, 1894. Decided February 12, 1895.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Brown & Lovelace,* for appellant.

*Sessions, Niskern & Bassett (F. W. Cook,* of counsel), for defendant.

HOOKER, J. The defendant was cashier of a national bank in the city of Muskegon. Taxes were assessed against the several stockholders upon the stock of said bank, two of whom failed to pay. Demand was then made upon the defendant, who refused payment. The action is based upon section 33 of Act No. 195, Laws of 1889 (3 How. Stat. § 1170*d*2), which provides:

"In case of any tax assessed upon the shares of the capital stock of any bank, he [the treasurer] shall call upon the cashier of such bank, and demand payment thereof; and thereupon it shall be the duty of such cashier to pay the same, and charge the amount so paid against the shares of stock so taxed."

Application was made to this Court for a *mandamus* to compel the defendant to pay these taxes, but it was denied. See *Eyke v. Lange,* 90 Mich. 592. Subsequently this action was brought.

The validity of a state law making it the duty of a national bank to pay the taxes assessed against its stockholders is supported by *Lionberger v. Rouse,* 9 Wall. 468; *National Bank v. Com.,* Id. 353. Our statute does not in express terms do this, but it is very clear that the money with which it is expected that the cashier will pay the taxes is that of the bank, as he is authorized to "charge the amount so paid against the shares of stock so taxed." The question here arises whether this is an attempt to

impose a personal or an official duty. If personal, we may reasonably say that he is expected to pay the taxes from his own means, and that he would have a right to recover them from the stockholders. In such case he could enforce payment only by action, and his chances for collecting from a non-resident stockholder would be no better than those of the tax collector. Again, the cashier may be unable to pay. On the other hand, a demand upon the cashier may well be treated as a demand upon the bank, and it is no hardship to say that upon such demand it is the duty of the bank to pay,—a duty which must be discharged by the bank, in its corporate capacity, through its proper officer, and one which it should not be allowed to avoid because the cashier has not been authorized to handle the funds or keep the books of the bank. We cannot say that the law will presume that the cashier may pay from the bank funds; for the national bank act, to which he must look for his authority, makes him the creature of the board of directors, who may appoint him and define his duties. National Bank Act, § 15. The bank has, what the cashier lacks, an account with the stockholder and the shares of stock, and it has property in its possession in which the stockholder has a pecuniary interest. Ordinarily, it is in a situation to reimburse itself from these sources, and in no such danger of loss as the cashier would be. Who can doubt that the intent of the Legislature was that the payment required was to be made by the cashier from funds of the bank, and that it was to be charged against the shares of stock taxed, upon the books of the bank? If these things are true, why should we say that the obligation is personal, and that it is not official; that the law looks to the cashier, and not to the bank?

It appears, then, that the State may legally charge the bank with this duty. It is said in *National Bank v. Com.,*

*supra*, that this is the common practice in New England. It is the just and natural thing to do, in order to facilitate collection against non-resident stockholders. It would seem to be unnatural and unjust to make this obligation a charge merely upon a cashier, personally. I think, therefore, that the law in question made it the duty of the bank to pay upon demand made upon the cashier. This being so, if this duty is to be enforced by action at. law, it should be by action against the bank, and not by suit against the cashier.

Inasmuch as the bank is not a party to this record, I do not express an opinion as to whether or not an action at law against the bank would be a proper procedure to collect a tax upon the stock. It is enough for the purpose of this case to say that, in my opinion, an action at law will not lie against the cashier in the premises, and that the judgment should be affirmed.

My brethren think that a rehearing should be granted in the *mandamus* case of *Eyke v. Lange.* Ordered accordingly.

McGRATH, C. J., and LONG, J., concurred with HOOKER, J.

GRANT, J. (*dissenting*).    After the decision of *Eyke v. Lange,* 90 Mich. 592, the city of Muskegon instituted this suit to recover against the defendant, who was the cashier of the bank, the amount of the tax assessed against its stockholders who had not paid. The court directed a verdict for the defendant upon the ground that defendant, the cashier of the bank, was not liable for the taxes assessed against its stockholders.

It is the policy of the tax law to provide expeditious methods for collecting the public revenue. The method of collecting the tax is not always confined to a direct proceeding against the party whose property is assessed.

Those in charge of the property taxed are often made the medium for collection. This method should be sustained unless there is some insurmountable legal obstacle in the way. Bank stock is held by both residents and non-residents. It is subject to taxation in the municipality where the bank is located. Under our tax law, shares in banks should be assessed to their owners in the town where the bank is located, provided that shares owned by a person residing within the county where the bank is located should be assessed in the town where he resides. Act No. 195, Laws of 1889, § 11, subd. 3. The law usually provides for the collection of this tax from the banks, which are then authorized to charge it against the stockholders, and upon whose stock they have a lien. In this State the provision for collection is as follows:

"In case of any tax assessed upon the shares of the capital stock of any bank, he [the treasurer] shall call upon the cashier of such bank, and demand payment thereof; and thereupon it shall be the duty of such cashier to pay the same, and charge the amount so paid against the shares of stock so taxed."

While this statute in terms imposes this duty upon the cashier, yet it is done for the bank, and when the entries are made upon the bank books it becomes a bank transaction. This method of procedure is sustained by Mr. Justice Cooley in his work on Taxation (2d ed., page 432), in the following language:

"For the most part, the taxes levied by the states are collected of the persons taxed, or enforced against the property in respect to which they are imposed. In a few cases, however, in which no injustice could result from such a course, the state may reach the party taxed by indirection, and collect in the first instance from some one else, who in turn will become collector from the person on whom the tax is really imposed. The reason for this is that in such cases it is more convenient to the state, and perhaps makes more certain the collection; and it could be

resorted to only when the case is such that injustice could result to no one. A case of the kind is where ·a tax is imposed on the dividends or other receipts of shareholders from the profits of corporations, or upon their shares, and the corporation is required to make the payment, which it would then deduct from the payments to be made to shareholders. There is no doubt of the right to do this, except as to payments to be made to non-residents, nor even as to them, if the statute under which their interests were acquired provided for the levying and collection of taxes in that manner."

The authorities cited by him fully sustain the text, and we need not cite them here. See, also, Cook, Stock, Stockh. & Corp. Law, § 566.

I see no difference in principle between making the bank or the cashier thereof a medium for collection. The same principle is applicable to both. The tax-payer is not injured. He is chargeable with knowledge of the law, and that his stock will be taxed, and of the time when due. He knows the means provided for its collection. If he desires to contest the validity of the tax, he can notify the cashier, and be allowed to come in and defend any suit that may be instituted against him. Referring to the record in *Eyke v. Lange,* I find it stated there that the stockholders had notified Mr. Lange to contest the tax. Under that decision, and under the contention of the defendant in this suit, the above provision of the statute would be nugatory, and the collector would be compelled either to seize the stock under his warrant or to bring suit against the individual stockholders. The latter would be impracticable and expensive, and is the very thing which the statute sought to avoid. The express duty is imposed upon the cashier to pay. In doing this he represents the stockholders. He has in his possession the means of payment. Whatever judgment is rendered against him is binding upon the stockholders. He can pay the judgment out of the funds in the bank which belong to them, and which

are under his control.    If there are no accrued dividends out of which to pay, the bank, through him, has a lien upon the stock which it can enforce to reimburse itself. The tax law of 1853 provided that, if any person refused or neglected to pay the tax imposed, the treasurer should levy the same by distress and sale of his goods and chattels, or of any goods and chattels in his possession; and no claim of property by any other person should be available to prevent the sale.    It further provided that, if the property so seized should be owned by any other person, such owner might recover, of the person for whose tax the same was sold, the value of such property in an action of *assumpsit* as for goods sold and delivered.    This law was sustained by this Court.    *Sears v. Cottrell*, 5 Mich. 251.    It certainly follows from the principle of that case that the Legislature may direct that the person having charge, possession, and control of the property assessed shall pay the tax, and collect the amount by suit or otherwise from the person against whom it is assessed.    It follows, also, that the legal duty to pay carries with it the right to bring suit.    I am of the opinion that the ruling of the learned circuit judge was wrong.

The judgment should be reversed, and, inasmuch as no fatal defect is shown in the tax proceedings, judgment should be entered in this Court for the amount of the tax, with the costs of both courts.

I am convinced, after mature deliberation and a more extended examination of the authorities, that there is doubt as to the correctness of the decision of *Eyke v. Lange.* The writ of *mandamus* will lie in some cases where there is a remedy at law.    In many cases a speedy determination of legal questions is of great importance.    This is especially true in the collection of the public revenue.    The following authorities sustain the proceedings by *mandamus:* *Barney v. State,* 42 Md. 480; *McVeagh v. City of Chicago,*

49 Ill. 318; *Town of St. Albans v. National Car Co.*, 57 Vt. 68. An able discussion will be found in this last case upon pages 84 and 85.

I concur with my brethren in holding that a rehearing should be ordered in the case of *Eyke v. Lange*, since they have held that the present suit cannot be maintained.

MONTGOMERY, J., did not sit.

---

LEONARD EYKE, TREASURER OF THE CITY OF MUSKEGON, v. HERMAN O. LANGE, CASHIER OF THE MERCHANTS' NATIONAL BANK OF MUSKEGON.

[See 90 Mich. 592; *ante*, 19.]