THE STATE at Relation and To The Use of JOHN T. BAY, Collector of the Revenue of Shannon County, v. CITIZENS STATE BANK, Appellant.

Division One, March 29, 1918.

1. **TAXATION: Against Banks: Tax Bill.** If it appears from the tax bill filed with the petition that the assessment was made against the bank and not against the stockholders, the State cannot recover in a suit against the bank alone on the facts disclosed by such tax bill.

2. ————: ————: **Assessment Against Stockholders: Tax Bill Not Conclusive.** The tax bill, while prima-facie evidence that the amount of taxes designated therein is just and correct, is not conclusive in respect to its recitals. Although the tax bill attached to the petition shows that the assessment was made against the bank, it may be shown by the assessment list that the assessment was properly made against the stockholders, and not against the corporation.

3. ————: **Assessment Against Stockholders: Liability of Bank.** The State may recover in a suit against a bank for taxes assessed against its stockholders, unless the bank has no funds or property under its control with which to pay them.

4. ————: **Assessment and Payment: Banks.** The statutory intention was to place national and state banks on the same plane as to the matter of taxation, and to require the corporations in each instance to pay the taxes assessed against their real estate, and to require their personal property to be assessed against their stockholders, as their interests may appear from statements furnished the assessor by their chief officers, and to require the taxes assessed on the shares of stock to be paid by the corporation, which is authorized to recover from the owners of the shares the taxes so paid.

5. ————: **Liability of Assignee.** A bank which acquired by purchase all the assets of another bank, among other things $6,064 in "reserve funds, undivided profits, premiums and earnings," becomes a creditor of the State for the taxes assessed against the stockholders of the assignor, then due, though not delinquent, and the amount of such taxes may be recovered by suit against the assignee bank.

6. ————: ————: **Valdity of Sale: Estoppel.** The bank which by purchase acquired all the assets of another bank, when sued for taxes which the law required such other bank to pay, is estopped to assert the invalidity of the sale by which it acquired such assets.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*S. A. Cunningham* for appellant.

(1) Failure of the petition to state a cause of action is available to the defendant at any time in any court, while the case is pending, either in the trial or appellate court, and whether raised by demurrer or not. R. S. 1909, sec. 1804; Hudson v. Cahoon, 193 Mo. 557. (2) The assessor may obtain of the bank a list of the shareholders, as provided by the statute, but he should make the assessment against the shareholders personally, and has no right to collect the taxes by selling the property of the bank or the shares of other stockholders, or other property belonging to them, except that of delinquent. Bank v. Meredith, 44 Mo. 500; Springfield v. Bank, 87 Mo. 445. Taxes should be assessed in the name of the owner of the stock, and not against the corporation or the property which the shares represents. State ex rel. v. Catron, 118 Mo. 280; State ex rel. v. Bank, 180 Mo. 717; State ex rel. v. Shryack, 179 Mo. 424; State ex rel. v. Bank, 160 Mo. 640. The shares of stock are personal property of the stockholders, and the corporation has not and cannot have any interest in them. R. S. 1909, sec. 2984; Watson v. Printing Co., 56 Mo. App. 151; State v. Railroad, 37 Mo. 269. (3) The court should not have admitted the tax bills in evidence, for the reason that they show the delinquent personal tax to have been assessed against the Birch Tree State Bank, a corporation, and not against the stock of the shareholders as is required by law. R. S. 1909, sec. 11357. (4) The petition for back taxes against the bank drawn on the theory that the bank is the agent of the shareholder for the payment of his taxes must allege and prove that the bank had in its possession, money or property of the shareholder out of which the taxes could be paid. Hershire v. Bank, 35 Iowa, 272; Bank v. Huffman, 61 N. W. 418. It is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of

action to such a third person; he being neither privy to the contract nor to the consideration. The contract must be made for his benefit, as its object, and he must be the party intended to be benefited, and it will not be so far extended as to give to a third person who is only indirectly and incidentally benefited by it a right to sue upon it. Porter v. Woods, 138 Mo. 554; Bank v. Chick, 170 Mo. App. 350; Howsmon v. Water Co., 119 Mo. 304; Beattie Mfg. Co. v. Clark, 208 Mo. 89; Uhrich v. Surety Co., 166 S. W. 845; Burton v. Larkin, 36 Kan. 246. A tax is not a debt in the ordinary sense of that term, as it is not founded upon contract, and as a general thing a debt can not be created in any other way. State ex rel. v. Snyder, 139 Mo. 553; Carondelet to use v. Picot, 38 Mo. 130. (5) The power to sell the property, both real and personal, of the corporation, when not expressly vested in the stockholders by the statute, is one which the directors alone can carry into effect. This is done by a resolution duly passed at a meeting called for that purpose, or at a regular meeting when a sale of the property of the corporation may be authorized. Magee on Banks and Banking (2 Ed.), sec. 90, p. 104; Hill v. Mining Co., 119 Mo. 29; secs. 1084, 1112, R. S. 1909; Miles v. Bank, 187 Mo. App. 247. The court should have given defendant's declaration offered at the close of all the evidence, there being no evidence on which to base his finding for plaintiff. State ex rel. v. Bank, 160 Mo. 640.

*John H. Chitwood* and *L. B. Shuck* for respondent.

RAILEY, C.—This action was brought in the name of the State, by John T. Bay, Collector of the Revenue in Shannon County, Missouri, to recover of defendant, the sum of $127.69, being the balance due as taxes, assessed in June, 1913, *against the stockholders of the Birch Tree State Bank,* the latter having formerly done a banking business in said county. The tax statement filed with petition indicates on its face that the taxes sued for were assessed against the *Birch Tree State Bank,* a Missouri incorporated bank, but the

assessment list for 1913 was offered in evidence by respondent, and it shows that the cashier of said Birch Tree State Bank made out and certified to the assessor of said county the statement required by Section 11357, Revised Statutes 1909, showing the list of stockholders in said bank, with the name of each inserted, and the number of shares owned by them respectively. Said statement gives the total number of shares held by the fourteen shareholders named, as one hundred, of the face value of $100 each, making $10,000. The amount of reserve funds, undivided profits, premiums or earnings, and all other values belonging to said corporation, are mentioned therein as amounting to $6064. The value of the real estate is placed in said statement at $4000, and the total value of the remaining property, at $16,064. The assessor, as shown by the list, deducted from the last named amount the value of the real estate, which left the total net value of the stock of said bank (at $120.64 per share) $12,064. The net value of the stock was then assessed at $6032, and the real estate aforesaid assessed at $1600.

It is fair to assume that the taxes levied on the above real estate were paid by the Birch Tree State Bank, as they are not included in the tax statement filed with the petition. Said tax statement likewise shows that J. W. Holden and W. A. McIntire, two of the stockholders of said Birch Tree State Bank, owned four shares each in said bank; that on January 19, 1915, they each paid the taxes on their assessment of stock, amounting to $5.52; that the remainder of taxes due on stock assessment, after deducting the $11.04 paid by the above stockholders, was $125.17. The latter sum, plus $2.52 interest, constituted the balance of $127.69 sued for in this action.

It appears from the record, that on October 21, 1913, W. I. Marshall, P. D. Gum, John F. Budd, J. W. Holden and E. T. Pate, representing themselves as directors and stockholders of the Birch Tree State Bank, sold and conveyed to the defendant bank, the assets of said Birch Tree State Bank. The defendant,

in the contract of sale, assumed and agreed to pay all amounts due from said Birch Tree State Bank, to its depositors, and all other creditors, "except stockholders from their stock representing the capital of the Birch Tree State Bank." The contract recites that W. I. Marshall, and the other directors and stockholders representing the Birch Tree State Bank, warrant that said bank has no other liabilities than those mentioned in "Exhibit B" attached to and made part of said contract of sale; and that they will hold the defendant harmless from the payment of any claims that may be brought against it by any of the creditors of the Birch Tree State Bank, *other* than those *mentioned* in said "Exhibit B." The taxes sued for are neither specifically mentioned, nor referred to, in either the contract of sale, or exhibits attached thereto.

C. L. V. Randall, a stockholder in defendant bank, was sworn as a witness in behalf of respondent. He testified that the defendant bank never bought the capital stock of the Birch Tree State Bank, *and that it never assumed any of the liabilities that might have grown out of the capital stock;* that the only liabilities which his bank did assume were set out in the contract, *and that all such liabilities were paid.*

Such other facts, if any, as may be deemed important, will be referred to in the opinion.

At the conclusion of the above testimony, the appellant interposed a demurrer to the evidence, which was overruled, and judgment entered by the trial court on May 15, 1915, for $127.69 and costs, in favor of respondent, and against defendant. The latter in due time filed its motion for a new trial, and motion in arrest of judgment. Both motions were overruled, and the cause duly appealed by it to this court.

I. At an early date the General Assembly of the State of Maryland passed an act authorizing the taxation of national banks in said State. In McCulloch v. State of Maryland, 17 U. S. (4 Wheat.) l. c. 436-7, Chief Justice Marshall, in construing the above act, said:

Tax Bill.

"We are unanimously of opinion, that the law passed by the Legislature of Maryland, imposing a tax on the Bank of the United States, is unconstitutional and void.

"This opinion does not deprive the States of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the State, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the State. But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the Government of the Union to carry its powers into execution. Such a tax must be unconstitutional."

Subsequently, Congress passed that which is now known as Section 5219, United States Compiled Statutes 1901, Chapter Three, Volume Three, page 3502, which reads as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the Legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes, to the same extent, according to its value, as other real property is taxed." [See Act, June 3, 1864, ch. 106, sec. 41, 13 Stat. III; also Act Feb. 10, 1868, ch. 7, 15 Stat. 34.]

274 Mo.—5.

In Home Savings Bank v. Des Moines, 205 U. S. l. · c. 516-17, Mr. Justice Moody, in behalf of the Supreme Court of the United States, said:

"The right to tax the shares of national banks arises by Congressional authority, but the right to tax shares of State banks exists independently of any such authority, for the State requires no leave to tax the holdings in its own corporations. The right of such taxation rests upon the theory that shares in corporations are property entirely distinct and independent from the property of the corporation. *The tax on an individual in respect to his shares in a corporation is not regarded as a tax upon the corporation itself.*" (Italics ours.)

The law as announced in the above authorities has been clearly recognized and followed from an early date in this State, as shown by the following cases: Lionberger v. Rowse, 43 Mo. 67; First National Bank of Hannibal v. Meredity, 44 Mo. 500; City of Springfield v. The First Natl. Bank of Springfield, 87 Mo. 441; State ex rel. v. Catron, 118 Mo. l. c. 284-5; City of Stanberry v. Jordan, 145 Mo. l. c. 377-8; State ex rel. v. Bank, 160 Mo. l. c. 647-8; State ex rel. v. Shryack, 179 Mo. 424; State ex rel. v. Bank of Carterville, 180 Mo. 717; State ex rel. Wilson v. Miners' Bank of Joplin, 181 Mo. 1; State ex rel. v. Bank of Tipton, 196 Mo. 516; State ex rel. v. Lesser, 237 Mo. 310; State ex rel. Campbell v. Brinkop, 238 Mo. 298; National Bank of Commerce v. Allen, 211 Fed. l. c. 746-7; National Bank of Commerce v. Allen, 223 Fed. l. c. 475-6.

Considered in the light of foregoing authorities, no recovery can be sustained on the facts disclosed in the tax bill filed with the petition, because it appears therefrom that the assessment of 1913 was made against the Birch Tree State Bank, and not against the stockholders thereof.

II. While the tax bill, by virtue of Section 11498, Revised Statutes 1909, is prima-facie evidence that the amount claimed in the suit is just and correct, yet it

**Liability of Bank.** is not conclusive in respect to these matters. [State ex rel. v. Vogelsang, 183 Mo. 1. c. 22; State ex rel. v. Cunningham, 153 Mo. 642; State ex rel. v. Fullerton, 143 Mo. 682.] The assessment list, referred to in the preceding statement, was introduced in evidence by respondent, and it shows that the assessment on which the taxes in controversy are based, was properly made against the *stockholders* of the Birch Tree State Bank, *and not against the corporation*. The case as it now stands before us, is an action by the Collector of the Revenue, in the name of the State, against the defendant, as the purchaser of the assets of said Birch Tree State Bank, to recover $127.69 on account of taxes past due, levied upon an assessment made in 1913 against the stockholders of said Birch Tree State Bank.

It is manifest from the former rulings of this court, in connection with the previous and present legislation upon that subject, that it was the intention of our law-making power in the enactment of Section 11357, Revised Statutes 1909, to place national and state banks upon a common plane; to require the corporations in each instance to pay the taxes assessed against their real estate, and that the personal property of such institutions shall be assessed against the respective stockholders thereof, as their interests may appear from the statement furnished the assessor by the chief officers of said banks. The purpose, in having the stockholders of banks assessed with the payment of taxes upon the personal property of said institutions, instead of assessing the banks direct, was to meet the obstacles presented by Chief Justice MARSHALL in the Maryland tax case supra, in which it was held that the National Bank could not be legally assessed with the payment of taxes like those in controversy here. It therefore becomes important at the outset, to ascertain and determine whether the Birch Tree State Bank could have been held liable for these taxes, had no sale of its assets been made, and it had been sued therefor.

The Legislators of this State evidently contemplated that a large portion of the stock in both state and national banks might be held by non-residents of the State; that in some of the banks there might be a large number of shareholders, whose respective interests were small; that it would be both inconvenient and expensive for the collector to recover the tax from the delinquent stockholders as provided in Sections 11461, 11463, and in the Laws of 1913, at pages 739 and 740. Hence, Section 11359, Revised Statutes 1909, was enacted to meet the above difficulties. Said section reads as follows:

"The taxes assessed on shares of stock embraced in such list [referring to Section 11357, supra] shall be paid by the corporations, respectively, and they may recover from the owners of such shares the amount so paid by them, or deduct the same from the dividends accruing on such shares; and the amount so paid shall be a lien on such shares, respectively, and shall be paid before a transfer thereof can be made."

The language used in this section is plain, unambiguous and mandatory in its terms. It should receive a reasonable construction at our hands, and *unless* the Birch Tree State Bank, without any sale of its assets having been made, in a suit against it for these taxes, could have shown that it had under its control no funds or property with which to pay the same, the collector, on the record before us, would have been entitled to a judgment against said bank for the taxes aforesaid. [State ex rel. v. Shryack, 179 Mo. l. c. 440; National Bank v. Commonwealth, 76 U. S. (9 Wall.) 353; Cummings v. National Bank, 101 U. S. 153; New Orleans v. Houston, 119 U. S. 265; Aberdeen Bank v. Chehalis County, 166 U. S. l. c. 446; Merchants' Bank v. Pennsylvania, 167 U. S. l. c. 465-6; Carstairs v. Cochran, 193 U. S. 10; Citizens Natl. Bank v. Kentucky, 217 U. S. l. c. 450-2; Clement Natl. Bank v. Vermont, 231 U. S. l. c. 140; Hawley v. Malden, 232 U. S. l. c. 9; Carstairs v. Cochran, 95 Md. 488; The Commonwealth v. Gaines & Co., 80 Kentucky, 489; Commis-

sioners' Court v. State ex rel., 172 Ala. l. c. 253-4, 55 So. 627; Union Bank v. City of Richmond, 94 Va. l. c. 319; Railroad v. Morrow, 87 Tenn. l. c. 427; Eyke v. Lange, 90 Mich. 592, s. c., 104 Mich. 26; St. Johns Natl. Bank v. Tp. of Bingham, 113 Mich. l. c. 206; City of Boston v. Beal, 51 Fed. 306; Charleston Natl. Bank v. Melton, 171 Fed. 743; City of Muskegon v. Lange, 104 Mich. 19.] A recovery is not permitted on the theory that the bank is primarily liable for the taxes assessed against the shareholders, but upon the principle that the latter have been legally assessed with the payment of same; that the bank is required by Section 11359, supra, to pay the taxes thus assessed; that it has refused to pay the same, although having in its possession funds or property applicable to the payment thereof.

On the facts above stated, the Birch Tree State Bank could have been held as garnishee for the taxes assessed against the respective stockholders. In order to avoid a multiplicity of proceedings against the stockholders, the Legislature saw fit to provide a more direct way of dealing with the subject, by the passage of Section 11359, which requires the bank to pay the tax, and to become re-imbursed as therein provided. We are of the opinion that there is neither hardship nor injustice under the circumstances aforesaid, in requiring the bank to pay the tax, nor in holding it liable therefor, in case of its neglect or refusal to pay the same.

In State ex rel. v. Shryack, 179 Mo. l. c. 440, we said: "After the assessment is thus made against the shares of stock in the names of the shareholders, *it is legal to make the bank pay the tax and recover it from the stockholders.* [Sec. 9155, R. S. 1899; National Bank v. Commonwealth, 9 Wall. 353; Aberdeen Bank v. Chehalis Co., 166 U. S. 440.]" (Italics ours.)

In National Bank v. Commonwealth, 76 U. S. (9 Wall.) 353 and following, the Supreme Court of the United States had under consideration the construction of a Kentucky statute which required the cashier of the bank to pay the taxes assessed against the shareholders

of same. The National Bank aforesaid failed to pay the tax assessed against its stockholders, and was sued therefor. Judgment went in favor of the Commonwealth, and the bank carried the case to the Supreme Court of the United States on 'writ of error. The judgment of the Kentucky Court of Appeals in favor of the Commonwealth was affirmed. Mr. Justice MILLER, upon pages 359-60, said:

"There are, then, but two questions to be considered in the case before us:

"Does the law of Kentucky, under which this tax is claimed, impose a tax upon the shares of the bank, or upon the capital of the bank, which is all invested in government bonds?

"2. *If it is found to be a tax on the shares, can the bank be compelled to pay the tax thus levied on the shares by the State?"* (Italics ours.)

Mr. Justice MILLER, on page 362, in discussing national banks, said:

"They are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the Nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law. *It is only when the State law incapacitates the banks from discharging their duties to the Government that it becomes unconstitutional. We do not see the remotest probability of this, in their being required to pay the tax which their stockholders owe to the State for the shares of their capital stock, when the law of the Federal Government authorizes the tax.*

"If the State of Kentucky had a claim against a stockholder of the bank who was a non-resident of the State, it could undoubtedly collect the claim by legal proceeding, in which the bank could be attached or garnished, and made to pay the debt out of the means of its shareholder under its control. That is, in effect, what the law of Kentucky does in regard to the tax

of the State on the bank shares. It is no greater inter-
ference with the functions of the bank than any other
legal proceeding to which its business operations may
subject it, and it in no manner hinders it from per-
forming all the duties of financial agent of the Govern-
ment."

The other authorities cited, either in principle or
in direct terms, sustain the conclusions reached by Mr.
Justice MILLER in the Kentucky case, supra, in
respect to the question under consideration.

We are therefore of the opinion that the Birch
Tree State Bank, on the facts disclosed in the state-
ment made by its cashier, on June 16, 1913, to the
county assessor, heretofore mentioned, could have been
held liable, had no sale of its assets been made to de-
fendant, for the taxes in controversy.

III. Under the pleadings, and on the record before
us, is the defendant liable for the taxes sued for in this
action?

It is clear, as heretofore shown, that the above
taxes were properly assessed against the shareholders
of the Birch Tree State Bank, according to their
respective interests. It is equally as clear, that it was
made the mandatory duty of said bank by Section
11359, Revised Statutes 1909, to *pay* the
above tax, *or* to show, when summoned into
court, that it had in its possession, or
under its control, neither funds nor property applicable
to the payment of same. The statement furnished the
assessor by the cashier of the Birch Tree State Bank,
on June 16, 1913, discloses on its face that said bank,
at that time, owned real estate of the value of $4000;
that over and above its capital stock of $10,000 it had on
hands "reserve funds, undivided profits, premiums or
earnings and all other values belonging to said corpora-
tion, $6064."

It appears from the evidence that on October 21,
1913, defendant acquired by purchase, *all* the assets of
said Birch Tree State Bank, under an agreement, "to

*Liability of Assignee.*

assume and pay all amounts due from the said Birch Tree State Bank to its depositors and all other creditors, except stockholders from their stock representing the capital of the Birch Tree State Bank." It further appears from the testimony that all the liabilities of last named bank have been paid, except the taxes sued for in this action. The defendant still retains the assets of said bank, including funds and property held by the latter which were applicable to the payment of said taxes.

When the sale of said assets was made in October, 1913, the State had a valid and existing demand against the Birch Tree State Bank for the taxes in controversy, although suit could not be maintained to collect the same until they became delinquent under the law. When due, Section 11359 aforesaid, in express terms, required said bank to pay the same; its failure to pay said tax as required by law, made the State a creditor of said bank to the extent of the taxes due as aforesaid.

Section 17, Chapter 3, United States Compiled Statutes 1901, Supplement of 1907, page 1026, reads as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his *provable debts, except* such as (1) are due as a *tax* levied by the United States, the State, county, district, or municipality in which he resides."

Section 190, Revised Statutes 1909, reads as follows:

"All demands against the estate of any deceased person shall be divided into the following classes:

"I. Funeral expenses.

"II. Expenses of the last sickness, wages of servants and demands for medicine and medical attendance during the last sickness of the deceased.

"III. All debts, including taxes due the State or any county or incorporated city or town; and it shall be the duty of the executor or administrator to pay all such taxes without any demand therefor being presented to the court for allowance."

It will thus be seen, that Congress, as well as our own Legislature, has placed obligations of this character upon a high plane.

Regardless of the technical definition of a "debt," as applied to taxes, heretofore mentioned in former cases, we are of the opinion, in view of the foregoing, that the Birch Tree State Bank should be considered as indebted to the State of Missouri, for the taxes in controversy, at the time its  assets were sold and delivered to defendant. The taxes now sued for, stood as an indebtedness against said bank, which defendant assumed to pay, when purchasing its assets. [State ex rel. v. Trust Co., 209 Mo. 1. c. 490-1.]

IV.   It is contended by appellant that the sale by the Birch Tree State Bank of its assets to it is invalid, **Valid Sale.** because of certain alleged irregularities. The contract of sale appears to have been made by certain stockholders and directors of the Birch Tree State Bank, and there is nothing in the record to indicate that they did not have full authority to consummate the deal. The State is not complaining of said transaction, nor are any of the stockholders or creditors of said bank seeking to have the sale set aside. The defendant acquired *all* the *assets* of said bank, is still holding possession thereof, and is now estopped from asserting the invalidity of the sale under which it acquired said assets. [Austin v. Loring, 63 Mo. 19; Railroad v. Bridge Co., 215 Mo. 1. c. 296; Proctor v. Nance, 220 Mo. 1. c. 116; Hector v. Mann, 225 Mo. 228; Railroad v. Second St. Imp. Co., 256 Mo. 386; St. Joseph v. Railroad, 268 Mo. 1. c. 55-6; Lyon v. City of St. Louis, 178 S. W. (Mo.) 1. c. 97-8; State ex rel. v. Ellison, 191 S. W. (Mo.) 1. c. 52.]

V.   We are of the opinion, that the pleadings and facts in the case before us, are sufficient in form and substance, to warrant a recovery upon the part of plaintiff, for the taxes described in the petition.

The judgment below was for the right party, and is accordingly affirmed. *Brown, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All concur; *Bond, P. J.,* in paragraph 3 and result.